UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

JORDAN ISAIAH MAURICE WATTS,

                    Plaintiff,                              Case No. 1:24-cv-1151

v.                                                         Honorable Robert J. Jonker

KALAMAZOO COUNTY et al.,

                    Defendants.

_____/

## <u>OPINION</u>

This is a civil rights action brought by a county jail pretrial detainee under 42 U.S.C. § 1983. Plaintiff has filed a motion to supplement his complaint (ECF No. 8) and a motion requesting preliminary injunctive relief (ECF No. 9). For the reasons stated below, the Court will deny both motions.

Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).

Applying these standards, the Court will dismiss Plaintiff's claims against Defendants County of Kalamazoo, Fuller, Beers, Faulk, West, Cattes, and McMillon for failure to state a claim under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Additionally, the Court

will dismiss, for failure to state a claim on which relief may be granted, the following claims: claims for violation of Plaintiff's First Amendment right to access the courts (Claim 1); claims for violation of his First Amendment right to freely exercise his religion (Claim 3); claims for violation of his First Amendment right to file grievances without retaliation (Claim 11); claims for violation of his Fourteenth Amendment right to adequate medical treatment (Claims 4 and 5); Fourteenth Amendment claims arising out of a lack of policy or training regarding the use of force (claim 6); and claims for violation of his Fourteenth Amendment substantive due process rights (Claim 8). The Court will also dismiss, for failure to state a claim on which relief may be granted, Plaintiff's request for injunctive relief seeking release from custody. Finally, the Court will dismiss Defendant Russell without prejudice pursuant to Plaintiff's request to voluntarily dismiss that party.

The claims that remain are as follows: Claim 2, regarding Plaintiff's First Amendment right to associate, against Defendant Dziedzic; Claim 10, regarding Plaintiff's First Amendment right to file a lawsuit without retaliation, against Defendants Dziedzic and Huber; Claim 7, regarding the use of excessive force on September 14, 2024, against Defendants Jelsomeno, Crump, Ensor, Whisman, McKenzie, and Marshall; and Claim 9,[1] regarding deliberate indifference to Plaintiff's isolated conditions of confinement, against Defendants Dziedzic and Huber.

---

[1] This also includes the procedural due process part of Claim 8 which is completely coextensive with Claim 9.

## Discussion

### I.    Factual Allegations

Plaintiff is presently detained, pending trial, in the Kalamazoo County Jail. The events about which he complains occurred during his pretrial detention at the jail. In Plaintiff's initial complaint, (ECF No. 1), he sues Kalamazoo County, Sheriff Richard Fuller, III, Lieutenant T. Faulk, Lieutenant Unknown Dziedzic, Captain Unknown Beers, Sergeant Unknown Jelsomeno, Sergeant Unknown West, Sergeant Unknown Cattes, Deputy Unknown Whisman, Deputy Unknown Crump, Deputy Unknown Ensor, Deputy Unknown McKenzie, Deputy Unknown Marshall, Prosecuting Attorney Chelsea Huber, Assistant Prosecutor Gregory Russell, and Deputy Unknown McMillon. (*Id*., PageID.1–4.) Defendants are sued in their respective personal and official capacities.

In the initial complaint, Plaintiff alleges that on August 21, 2024, at 8:10 a.m., he was arrested and brought to the Kalamazoo County Jail. (*Id*., PageID.5.) He was placed in unrestricted housing where he had access to a telephone, tablet, visits, and contact with other inmates. (*Id*.) Plaintiff remained there, misconduct free, until September 12, 2024. (*Id*.) On that date, he was transported to the district court. At court, Plaintiff, through his attorney Maggie Jones, asked District Court Judge Kathleen Hemmingway to recuse herself because two days before Plaintiff's arrest, he had filed a civil action against the Sheriff's Office, County Detectives, Portage Detectives, Federal Prosecutors, and Judge Hemmingway. (*Id*.) Judge Hemmingway set a hearing on Plaintiff's recusal request for September 19, 2024. (*Id*.)

When Plaintiff returned to the jail, he noticed that he was unable to use the telephone. (*Id*.) An hour passed and then Defendant West and non-parties Deputy Lopez and Sergeant Baumont

told Plaintiff to pack his things because he was moving to isolation. (*Id*.) Plaintiff asked if he had done anything wrong. (*Id*.) He was told that the order came from "command."[2] (*Id*.)

When Plaintiff arrived at the isolation unit, he sat down and begged Sergeant Baumont to return him to confinement with others because he had been traumatized by prior stays in isolation. (*Id*.) Baumont moved Plaintiff to segregation, rather than isolation. (*Id*.) Plaintiff explains that in segregation he would be able to hear other inmates around him. (*Id*.) Sergeant Baumont and Defendant West told Plaintiff he would not have access to the telephone, tablet, or visits, and that he would be on 24-hour lockdown. (*Id*.) The sergeants told Plaintiff that "command" would arrive in the morning and that Plaintiff could discuss the matter with "command" in the morning. (*Id*.)

On September 13, Plaintiff asked to speak with "command" and also Community Mental Health (CMH), to no avail. He became so frustrated that he began to kick the door and ended up twisting his ankle. (*Id*.) Plaintiff's medical emergency call button had been turned off. (*Id*.) He yelled to other inmates to push their buttons to summon assistance. (*Id*., PageID.5–6.) Defendants Whisman and Ensor and a non-party deputy, Blythe, responded. (*Id*., PageID.6.) Plaintiff informed the deputies that he would not stop kicking his door until he was permitted to speak with a sergeant, CMH, or somebody in "command." (*Id*.)

Defendant Whisman handcuffed Plaintiff, helped him up and, with the other deputies, escorted Plaintiff to the intake area. (*Id*.) Plaintiff informed Whisman that he thought "the staff wants to hurt [Plaintiff], [Plaintiff would] make them hurt [Plaintiff,] and [Plaintiff was] sorry." (*Id*.) As they arrived at intake, Plaintiff noticed the deputies were taking him to a cell out of view from others. (*Id*.) He got scared, "tensed up and sat down." (*Id*.) Then, "almost every deputy

---

[2] In this opinion, the Court corrects capitalization, spelling, grammar, and punctuation in quotations from Plaintiff's filings.

besides Blythe and Carter started to jump on [Plaintiff.]" (*Id*.) The deputies pulled Plaintiff's legs out from under him, twisting his already twisted ankle in the process. (*Id*.) The deputies then lifted Plaintiff up and put him in a restraint chair. (*Id*.) One deputy grabbed Plaintiff from behind, partially cutting off Plaintiff's airway. Others pulled Plaintiff's hands away from each other, while he was still handcuffed. (*Id*.) The deputies uncuffed Plaintiff. Defendant Jelsomeno ran his knee into Plaintiff's ribs three times. (*Id*.)

Plaintiff was rolled into a room strapped to the chair. Plaintiff asked Jelsomeno why they "did that." (*Id*.) Jelsomeno did not know, he just came in while it was happening. (*Id*.) Plaintiff told Jelsomeno that Plaintiff believed he was being retaliated against because of the lawsuit. (*Id*.) Plaintiff decided to stay in the chair until he was calm. (*Id*., PageID.7.) Then he asked Jelsomeno to see medical. (*Id*.) Jelsomeno informed Plaintiff that medical personnel was not in the jail on the weekends, but that Jelsomeno could give Plaintiff pain medication. (*Id*.) After a few hours, Plaintiff was removed from the restraint chair and placed on suicide watch. (*Id*.) Plaintiff continued to seek medical help, to no avail. (*Id*.) At one point, Plaintiff asked Defendant McKenzie why Plaintiff was moved in the first place. (*Id*.) Plaintiff reports that McKenzie responded, "you can't be threat[en]ing lawsuits." (*Id*.)

The following Monday, Plaintiff asked Defendant McMillon for medical assistance. (*Id*.) McMillon said he would get the nurse, but no one came. (*Id*.) "CMH Mike" came, saw Plaintiff, and cleared him from suicide watch. Plaintiff states that Mike told Plaintiff that Defendant Dziedzic said "they" are helping detectives and the prosecutor and that was why Plaintiff was sent to isolation. (*Id*.)

Plaintiff wrote Defendants Dziedzic and West a kite asking for permission to call Plaintiff's attorney to prepare for the recusal hearing. (*Id*.) The defendants never responded. (*Id*.) Plaintiff

asked Defendant Ensor to get Defendant West, but Ensor told Plaintiff that West said no. (*Id.*) Plaintiff wrote grievances for the use of excessive force and for moving Plaintiff to isolation without giving Plaintiff a reason or due process.

On September 19, Plaintiff lost his recusal motion hearing "because [Plaintiff's] lawyer could not give the courts the information she needed because the jail isolated [Plaintiff.]" (*Id.*, PageID.7–8.) Upon Plaintiff's return to jail, nothing changed. (*Id.*, PageID.8.) He sent kites to "command," Defendant Beers, and Defendant Fuller asking why he was denied due process and what he had done wrong. (*Id.*)

On September 20, Plaintiff sent a kite to medical. (*Id.*) Nurse Betty saw Plaintiff and offered him ibuprofen and Tylenol for the pain. (*Id.*) The nurse also told Plaintiff that if he went to the hospital, the hospital would tell him the ribs have to heal on their own. (*Id.*)

On September 21, Plaintiff could no longer send kites using the tablet. (*Id.*) He could only use the tablet for law library purposes for short periods. (*Id.*)

Plaintiff returned to court on September 24 for his preliminary examination. (*Id.*) Plaintiff complained to Judge Hemmingway regarding his treatment at the jail. (*Id.*)

On September 27, Defendant West responded to Plaintiff's grievances. (*Id.*) West informed Plaintiff that he was moved to isolation because of his behavior. (*Id.*) That same day, Plaintiff received a misconduct report regarding the incident in the intake area on September 13. (*Id.*) Plaintiff filed a grievance about the misconduct. (*Id.*)

Also on that day, Plaintiff complained to Defendant Jelsemeno that the misconduct was retaliatory. (*Id.*) Jelsemeno said it did not matter because Plaintiff was found not guilty. (*Id.*) Defendants Jelsemeno and Whisman told Plaintiff they did not know why Plaintiff was being punished.

6

On October 1, Defendant Faulk talked to Plaintiff about the Step II grievances. (*Id*., PageID.9.) Faulk told Plaintiff that the detectives and prosecutors asked the county to move Plaintiff to isolation. (*Id*.) Faulk could not tell Plaintiff who the detectives were. (*Id*.) Plaintiff explained to Faulk that he had been subjected to excessive force and to isolation without due process. (*Id*.) After Plaintiff talked to Faulk, he filed Step III grievances. (*Id*.)

Plaintiff talked to Defendant Cattes. (*Id*.) Cattes told Plaintiff that Cattes would look at the court transcripts and, if the court did not care where Plaintiff was housed, Cattes did not either. (*Id*.)

On October 3, Plaintiff learned his father was terminally ill and on his death bed. (*Id*.) On October 4, Faulk brought Plaintiff a tablet. (*Id*., PageID.10.) Faulk said he would not call Plaintiff's family for him. (*Id*.) Faulk told Plaintiff to have his attorney call the family. (*Id*.) Faulk told Plaintiff that Faulk did not know when Plaintiff would get out of isolation and that there was no review process. (*Id*.)

Faulk reviewed Plaintiff's Step III grievances on October 7. (*Id*., PageID.9.) Faulk told Plaintiff that his cell location and privilege restrictions were based on Plaintiff's behavior. (*Id*.)

Plaintiff notes that since September 12, he has been denied access to friends and family, telephone, visits, email, religious activities, and other inmates. (*Id*.) He is housed 24 hours a day in an isolated cell that is filthy, cold, with "green stuff oozing from the shower an[d] sink," and a broken television. (*Id*.) Plaintiff cannot exercise outside of the cell or go to recreation. (*Id*.) Every time Plaintiff leaves the cell, he is shackled. (*Id*.)

Based on these factual allegations, Plaintiff identifies eleven separate claims. He seeks an emergency preliminary injunction to be released on bond or to general population with all privileges restored. He seeks compensatory and punitive damages and declaratory relief. And he

asks that policies and procedures be created at the Kalamazoo County Jail to protect future pretrial detainees.

## II.    Motion to Supplement Complaint (ECF No. 8)

Plaintiff filed a motion to supplement his complaint on January 15, 2025. (ECF No. 8.) As summarized above, Plaintiff's initial complaint recounts about one month of his experiences in the Kalamazoo County Jail. Plaintiff's proposed supplement picks up chronologically where his initial complaint left off. Plaintiff adds a series of new Defendants and claims and raises new claims against some of the Defendants named in his initial complaint, apparently based upon events subsequent to his initial complaint. In the proposed supplement, Plaintiff again goes through his time at the Kalamazoo County Jail day-by-day identifying the conduct that he believes violated his constitutional rights.

A plaintiff, in the early stages of a case, may file an amendment "once as a matter of course," Fed. R. Civ. P. 15(a)(1); thereafter, he or she may only do so "with the . . . court's leave," Fed. R. Civ. P. 15(a)(2). To file a supplemental complaint, however, a plaintiff must always seek leave of court. Fed. R. Civ. P. 15(d). In *United States v. Hicks*, 283 F.3d 380 (D.C. Cir. 2002), the District of Columbia Circuit explained that amendments and supplements differ in that "the latter . . . sets forth 'transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented.'" *Id*. at 385. By that definition, Plaintiff must seek leave to file his supplement. He may not file it as a matter of right.

The standard for granting leave to supplement under Rule 15(d) is identical to the standard governing leave to amend under Rule 15(a)(2). *See Spies v. Voinovich*, 48 F. App'x 520, 527 (6th Cir. 2002). In other words, leave to supplement "should [be] freely given[n] . . . when justice so requires." Fed. R. Civ. P. 15(a)(2). In *Foman v. Davis*, 371 U.S. 178 (1962), the Supreme Court identified some circumstances in which "justice" might counsel against granting leave: "undue

delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Id*. at 182. If a claim would be properly dismissed, amendment to add the claim would be futile. *Thiokol Corp. v. Michigan Dep't of Treasury*, 987 F.2d 376, 383 (6th Cir. 1993).

Here, justice does not favor allowing Plaintiff's proposed supplement. Federal Rule of Civil Procedure 20(a) limits the joinder of parties in a single lawsuit, whereas Federal Rule of Civil Procedure 18(a) limits the joinder of claims. Rule 20(a)(2) governs when multiple defendants may be joined in one action:

> [p]ersons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action."

Fed. R. Civ. P. 20(a)(2). Rule 18(a) states: "A party asserting a claim . . . may join, as independent or alternative claims, as many claims as it has against an opposing party." Fed. R. Civ. P. 18(a).

Courts have recognized that, where multiple parties are named, as in this case, the analysis under Rule 20 precedes that under Rule 18:

> Rule 20 deals solely with joinder of parties and becomes relevant only when there is more than one party on one or both sides of the action. It is not concerned with joinder of claims, which is governed by Rule 18. Therefore, in actions involving multiple defendants Rule 20 operates independently of Rule 18. . . .

> Despite the broad language of Rule 18(a), plaintiff may join multiple defendants in a single action only if plaintiff asserts at least one claim to relief against each of them that arises out of the same transaction or occurrence and presents questions of law or fact common to all.

7 Charles Allen Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1655 (3d ed. 2001), *quoted in Proctor v. Applegate*, 661 F. Supp. 2d 743, 778 (E.D. Mich. 2009), *and Garcia v. Munoz*, No. 08-1648, 2008 WL 2064476, at *3 (D.N.J. May 14, 2008); *see also United States v.*

*Mississippi*, 380 U.S. 128, 142–43 (1965) (discussing that joinder of defendants is permitted by Rule 20 if both commonality and same transaction requirements are satisfied); *UWM Student Ass'n v. Lovell*, 888 F.3d 854, 863 (7th Cir. 2018) ("Unrelated claims against different defendants belong in different suits." *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). A district judge necessarily has considerable discretion in applying Rules 18 and 20. The rules 'operate[ ] independently' because Rule 20 contains limitations that Rule 18 does not, and the Rule 20 inquiry comes first.").

Therefore, "a civil plaintiff may not name more than one defendant in his original or amended complaint unless one claim against each additional defendant is transactionally related to the claim against the first defendant and involves a common question of law or fact." *Proctor*, 661 F. Supp. 2d at 778 (internal quotation marks omitted). When determining if civil rights claims arise from the same transaction or occurrence, a court may consider a variety of factors, including, "the time period during which the alleged acts occurred; whether the acts . . . are related; whether more than one act . . . is alleged; whether the same supervisors were involved, and whether the defendants were at different geographical locations." *Id.* (citation omitted).

Permitting improper joinder in a prisoner civil rights action undermines the purpose of the PLRA, which was to reduce the large number of frivolous prisoner lawsuits that were being filed in the federal courts. *See Riley v. Kurtz*, 361 F.3d 906, 917 (6th Cir. 2004). The Seventh Circuit has explained that a prisoner like plaintiff may not join in one complaint all of the defendants against whom he may have a claim, unless the prisoner satisfies the dual requirements of Rule 20(a)(2):

> Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass that [a multi]-claim, [multi]-defendant suit produce[s] but also to ensure that prisoners pay the required filing fees—for the Prison

> Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g) . . . .
>
> A buckshot complaint that would be rejected if filed by a free person—say, a suit complaining that A defrauded the plaintiff, B defamed him, C punched him, D failed to pay a debt, and E infringed his copyright, all in different transactions—should be rejected if filed by a prisoner.

*George*, 507 F.3d at 607; *see also Brown v. Blaine*, 185 F. App'x 166, 168–69 (3d Cir. 2006) (allowing an inmate to assert unrelated claims against new defendants based on actions taken after the filing of his original complaint would have defeated the purpose of the three strikes provision of PLRA).

Under such circumstances, to allow a plaintiff to proceed with improperly joined claims and defendants in a single action would permit him to circumvent the PLRA's filing fee provisions and allow him to avoid having to incur a "strike" for purposes of § 1915(g), should any of his claims be dismissed as frivolous or for failure to state a claim. Courts are therefore obligated to reject misjoined claims like Plaintiff's. *See Owens v. Hinsley*, 635 F.3d 950, 952 (7th Cir. 2011).

Plaintiff's initial complaint focuses on his placement in a more restricted custody environment during September 2024. All of his claims connect, in some way, to that event. Plaintiff's proposed new claims relate to his placement in a more restricted custody environment in November following determinations of misconduct. Although all of the claims involve misconduct and the conditions of confinement in segregation, they arise a couple of months apart and generally involve different defendants. The Court concludes that the events in November are not transactionally related to the events described in Plaintiff's initial complaint. Accordingly, the Court concludes further that it would not promote justice to join Plaintiff's new claims to the claims already presented here. Plaintiff's motion to supplement, therefore, will be denied. The denial is without prejudice to Plaintiff's ability to raise properly joined claims in a new action.

### III.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to

12

identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

In this action, Plaintiff identifies eleven distinct constitutional claims. By way of those eleven claims, Plaintiff claims that Defendants violated his First Amendment right to access the courts (Claim 1), his First Amendment rights to associate (Claim 2), his First Amendment right to the free exercise of his religion (Claim 3), his Eighth Amendment right to treatment for his serious medical needs because no medical personnel were available on weekends (Claim 4), his Eighth Amendment right to treatment for his serious medical needs in the form of pain medications, seeing a nurse, or visiting a hospital (Claim 5), his Fourteenth Amendment right to proper training of the jail staff to avoid the use of excessive force in response to passive resistance (Claim 6), his Fourteenth Amendment right to be free of the use of excessive force (Claim 7), his Fourteenth Amendment right to be afforded due process before being placed in isolation (Claim 8), his Eighth (or Fourteenth Amendment) right to be free of unsafe conditions of confinement in isolation (Claim 9), and his First Amendment right to be free of retaliatory conduct in response to his exercise of First Amendment rights (Claims 10 and 11).

### A.    Claims Against Assistant Prosecutor Gregory Russell

In Plaintiff's motion to amend his complaint he states: "I would like Gregory Russell dismissed from the suit as it would serve the interest of justice." (Mot., ECF No. 8, PageID.59.) Under Federal Rule of Civil Procedure 41(a)(1), "the plaintiff may dismiss an action without a court order by filing . . . a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment . . . ." Fed. R. Civ. P. 41(a)(1). There is some question in the Sixth Circuit whether such a notice of dismissal would suffice to effect the dismissal of one of several parties to an action. *See Philip Care Mfg. Co. v. Taylor*, 286 F.2d 782, 785 (6th Cir. 1961). For that reason, the Court will interpret Plaintiff's statement as a request to voluntarily dismiss

Defendant Russell. Per Plaintiff's request, the Court will dismiss all of Plaintiff's claims against Defendant Russell without prejudice.

### B.    Claims Against Prosecutor Chelsea Huber

The sufficiency of Plaintiff's allegations against Defendant Huber depend on whether the specific actions of which Plaintiff complains arise out of Defendant Huber's prosecution of the state criminal charges against Plaintiff. If Defendant Huber's actions are properly considered part of the prosecution of state criminal charges against Plaintiff, then Plaintiff has failed to state a claim against Defendant Huber on which relief may be granted.

Plaintiff sues Defendant Huber in her official and personal capacities. Official capacity lawsuits "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (citing *Monell v. New York City Dep't of Social Services*, 436 U.S. 658, 690, n.55 (1978)). An official capacity suit is to be treated as a suit against the entity itself. *Id*. at 166 (citing *Brandon v. Holt*, 469 U.S. 464, 471–72 (1985)); s*ee also Matthew v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). "Individuals sued in their official capacities stand in the shoes of the entity they represent," and the suit is not against the official personally. *Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003); *Graham*, 473 U.S. at 165–66.

As a prosecutor sued in her official capacity, Defendant Huber is entitled to sovereign immunity. Although prosecutors may be elected county officials or employed by the county, prosecutors in Michigan are deemed to be state agents when prosecuting state criminal charges. *Cady v. Arenac Cnty.*, 574 F.3d 334, 342–43 (6th Cir. 2009). Therefore, Plaintiff's claims against Defendant Huber in her official capacity are essentially claims against the State of Michigan. Plaintiff may not maintain a § 1983 action against the State of Michigan.

Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986).

In addition, the State of Michigan is not a "person" who may be sued under Section 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989)); *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013). Plaintiff may not skirt that limitation by seeking monetary damages against Defendant Huber in her official capacity. *See, e.g., Papasan v. Allain,* 478 U.S. 265, 278 (1986) (noting that "compensatory or deterrence interests are insufficient to overcome the dictates of the Eleventh Amendment," and "[r]elief that in essence serves to compensate a party injured in the past by an action of a state official in his official capacity that was illegal under federal law is barred even when the state official is the named defendant" (internal quotation marks, citation, and footnote omitted)). Therefore, to the extent that Defendant Huber was acting in furtherance of the criminal prosecution of Plaintiff on behalf of the state, Plaintiff has failed to state an official capacity damages[3] claim against the Defendant Huber on which relief may be granted.

---

[3] Although damages claims against official capacity defendants are properly dismissed, an official capacity action seeking injunctive or declaratory relief constitutes an exception to sovereign immunity. *See Ex parte Young*, 209 U.S. 123, 159–60 (1908) (holding that the Eleventh Amendment immunity does not bar prospective injunctive relief against a state official). The United States Supreme Court has determined that a suit under *Ex parte Young* for prospective

Furthermore, Defendant Huber, as a prosecutor, is entitled to absolute immunity for her actions in prosecuting the criminal action against Plaintiff. The Supreme Court embraces a functional approach to determining whether a prosecutor is entitled to absolute immunity. *See Kalina v. Fletcher*, 522 U.S. 118, 127 (1997); *Burns v. Reed*, 500 U.S. 478, 486 (1991); *Forrester v. White*, 484 U.S. 219, 229 (1988); *accord Koubriti v. Convertino*, 593 F.3d 459, 467 (6th Cir. 2010). Under a functional analysis, a prosecutor is absolutely immune when performing the traditional functions of an advocate. *Kalina*, 522 U.S. at 130; *Spurlock v. Thompson*, 330 F.3d 791, 797 (6th Cir. 2003). The Supreme Court has held that a prosecutor is absolutely immune for the initiation and pursuit of a criminal prosecution. *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976). Acts which occur in the course of the prosecutor's role as advocate are entitled to the protection afforded by absolute immunity, in contrast to investigatory or administrative functions that are normally performed by a detective or police officer. *Buckley v. Fitzsimmons*, 509 U.S. 259, 273, 276–78 (1993); *Grant v. Hollenbach*, 870 F.2d 1135, 1137 (6th Cir. 1989). In the Sixth Circuit, the focus of the inquiry is how closely related the prosecutor's conduct is to his role as an advocate intimately associated with the judicial phase of the criminal process. *Spurlock*, 330 F.3d at 797. Here, Plaintiff's allegations against Defendant Huber principally focuses on her role as an advocate

---

injunctive relief should not be treated as an action against the state. *Graham*, 473 U.S. at 167 n.14. Instead, the doctrine is a fiction recognizing that unconstitutional acts cannot have been authorized by the state and therefore cannot be considered done under the state's authority. *Id*. Nonetheless, the Supreme Court has cautioned that, "*Ex parte Young* can only be used to avoid a state's sovereign immunity when a 'complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Ladd v. Marchbanks*, 971 F.3d 574, 581 (6th Cir. 2020) (quoting *Verizon Md. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)). Past exposure to an isolated incident of illegal conduct does not, by itself, sufficiently prove that the plaintiff will be subjected to the illegal conduct again. *See, e.g., Los Angeles v. Lyons*, 461 U.S. 95 (1983) (addressing injunctive relief*); MedImmune, Inc. v. Genentech, Inc.,* 549 U.S. 118, 127 (2007) (addressing declaratory relief). Although Plaintiff seeks injunctive relief in this case, he does not seek such relief against Defendant Huber.

for the State. To that extent, Defendant Huber is entitled to prosecutorial immunity from Plaintiff's claims against her in her personal capacity.[4]

### C.    Claims Against Kalamazoo County and Official Capacity Claims Against County Employees

Plaintiff sues Kalamazoo County. He also sues the individual Defendants, who are all employees of the county, in their official and individual capacities. (Compl., ECF No. 1, PageID.1– 4.) As explained above, official capacity lawsuits "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Graham*, 473 U.S. at 165 . That is, an official capacity suit is to be treated as a suit against the entity itself. *Id.* at 166. Therefore, Plaintiff's official capacity suit against Defendants, all of whom Plaintiff identifies as employed by Kalamazoo County, is treated as a suit against the county itself.

"Under 42 U.S.C. § 1983, while a municipality can be held liable for a constitutional violation, there is no vicarious liability based on the acts of its employees alone." *Lipman v. Budish*, 974 F.3d 726, 747 (6th Cir. 2020) (citing *Monell*, 436 U.S. 690–91). Instead, a municipality "can be sued under § 1983 only when a policy or custom of that government caused the injury in question." *Id.* (citations omitted). "[T]he finding of a policy or custom is the initial determination to be made in any municipal liability claim." *Doe v. Claiborne Cnty.*, 103 F.3d 495, 509 (6th Cir. 1996). Further, the policy or custom must be the moving force behind the constitutional injury,

---

[4] To the extent Plaintiff's claims against Defendant Huber do not arise out of her role as an advocate pursuing criminal charges against Plaintiff on behalf of the state, it follows that the claims arise out of her role as an employee of the county. Based on Plaintiff's allegations, it is not possible to isolate Defendant Huber's actions as necessarily falling in one category or the other. If it is ultimately determined that Defendant Huber's actions fall outside of her role as an advocate for the state pursuing criminal prosecution, the doctrines of sovereign immunity or prosecutorial immunity would not apply. Moreover, the county is a "person" for purposes of liability under § 1983. Accordingly, the Court will also address Plaintiff's claims as if Defendant Huber's actions were taken in her role as a county employee. Further discussion of claims against Defendant Huber relate only to Defendant Huber's actions in her role as a county employee.

and a plaintiff must identify the policy, connect the policy to the governmental entity, and show that the particular injury was incurred because of the execution of that policy. *Turner v. City of Taylor*, 412 F.3d 629, 639 (6th Cir. 2005) (citing *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003)); *Claiborne Cnty.*, 103 F.3d at 508–09.

A policy includes a "policy statement, ordinance, regulation, or decision officially adopted and promulgated" by the sheriff's department. *See Monell*, 436 U.S. at 690. Moreover, the Sixth Circuit has explained that a custom "for the purposes of *Monell* liability must be so permanent and well settled as to constitute a custom or usage with the force of law." *Claiborne Cnty.*, 103 F.3d at 507. "In short, a 'custom' is a 'legal institution' not memorialized by written law." *Id.*

Plaintiff does not identify a county policy that caused Plaintiff's particular injuries. With regard to the absence of healthcare professionals at the jail on weekends, he describes it as a "common practice." (Compl., ECF No. 1, PageID.11.) That is a far cry from contending that it is "so permanent and well settled as to constitute a custom or usage with the force of law." *Claiborne Cnty*, 103 F.3d at 507. Plaintiff also complains that the county "failed to create a policy . . . an[d] . . . let the jail staff make it a practice to use excessive force on detainee's who passively resist . . . and let this detainee be subjected to excessive force knowing the failure to properly train [or] create a policy and practices created a substantial risk of serious harm." (Compl., ECF No. 1, PageID.11.) Plaintiff also notes that the county "failed to have policies that protect against" violation of Plaintiff's due process rights. (*Id.*, PageID.12.) Therefore, Plaintiff specifically alleges that there were no policies at issue, and he has failed to allege any facts to the contrary. Accordingly, the Court concludes that Plaintiff's allegations against Kalamazoo County and the individual Defendants in their official capacities essentially rest on a theory of vicarious liability and therefore do not state a claim.

### D.      Claims Against Defendants Fuller and Beers

In this action, Plaintiff does not allege any facts to suggest that Defendant Sheriff Fuller or Defendant Captain Beers were personally involved in the alleged violations of Plaintiff's constitutional rights; instead, Plaintiff seeks to hold Defendants Fuller and Beers liable due to their supervisory positions. (*See generally* Compl., ECF No. 1.)

However, government officials, such as Defendants Fuller and Beers, may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell*, 436 U.S. at 691; *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *See Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002); *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004).

The only factual allegations[5] that Plaintiff makes with regard to Defendants Fuller and Beers reads as follows: "I sent kites to command, Captain Beers, [and] Sheriff Richard Fuller, asking why I was not afforded any due process, why I was being treated different[ly], and what

---

[5] When conducting this initial PLRA review, the Court must "accept all well-pleaded allegations in the plaintiff's complaint as true and view facts in the light most favorable to the plaintiff, [but the Court] 'need not accept as true legal conclusions or unwarranted factual inferences.'" *Nugent v. Spectrum Juvenile Justice Servs.*, 72 F.4th 135, 138 (6th Cir. 2023) (quoting *Bouye v. Bruce*, 61 F.4th 485, 489 (6th Cir. 2023)); *see also Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."); *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (noting that in reviewing a motion to dismiss, the district court "must take all the factual allegations in the complaint as true," but that the court is "not bound to accept as true a legal conclusion couched as a factual allegation"). Plaintiff includes Defendants Fuller and Beers when he, in conclusory fashion, lists the parties who violated his constitutional rights with regard to Claims 1, 2, 3, 4, 6, 8, 9, and 10. (*See, e.g.*, Compl., ECF No. 1, PageID.11 ("Kalamazoo County, Sheriff Richard Fuller, Captain Beers, Lt. Faulk, Lt. Dziedzic, [and] Sgt. West violated my First Amendment rights when they stopped me from being able to go to Bible study and church.").)

did I do wrong because I still have not received a misconduct." (Compl., ECF No. 1, PageID.8.) However, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).

The Sixth Circuit has summarized the minimum required to constitute active conduct by a supervisory official as follows:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee*, 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995)); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993).

Here, the factual allegations in the complaint, which are summarized above, are insufficient to show that Defendants Fuller or Beers encouraged or condoned the conduct of their subordinates, or authorized, approved, or knowingly acquiesced in the conduct. And, any conclusory allegations of supervisory responsibility are insufficient to show that Defendants Fuller or Beers were personally involved in the alleged violations of Plaintiff's constitutional rights. *See, e.g.*, *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers*, 368 F.3d at 888. Accordingly, Plaintiff has failed to state a claim against Defendants Fuller or Beers on which relief may be granted.[6]

---

[6] Because Plaintiff fails to allege sufficient active involvement on the part of Defendants Fuller and Beers in the constitutional violations, the Court will only include those defendants in the list of defendants for some of the constitutional violation discussed below.

20

### E.    First Amendment Claims

#### 1.    Access to the Courts (Claim 1)

Plaintiff contends that Defendants Faulk, Dziedzic, and West violated Plaintiff's First Amendment right to access the courts by denying Plaintiff the opportunity to communicate with counsel prior to hearings on September 19 and 24, 2024. (Compl., ECF No. 1, PageID.10.)

It is clearly established that prisoners have a constitutionally protected right of access to the courts under the First and Fourteenth Amendments. *See Lewis v. Casey*, 518 U.S. 343, 354 (1996); *Bounds v. Smith*, 430 U.S. 817, 821 (1977); *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). That right of access extends to pretrial detainees. *See, e.g.*, *Reynolds v. Stewart*, No. 17-2293, 2018 WL 1989635, at *2 (6th Cir. Apr. 25, 2018) ("Prisoners and pretrial detainees have a constitutional right of access to the courts."); *McBee v. Campbell Cnty. Detention Cntr.*, Nos. 17-5841/5943, 2018 WL 2046303, at *3 (6th Cir. Mar. 15, 2018) (same); *Looper v. Gibson*, 63 F. App'x 877, 878 (6th Cir. 2003) ("States have affirmative obligations to ensure prisoners and pretrial detainees meaningful access to the courts . . . .").

Prison officials have a two-fold duty to protect a prisoner's right of access to the courts. *McFarland v. Luttrell*, No. 94-6231, 1995 WL 150511, at *3 (6th Cir. Apr. 5, 1995). First, they must provide affirmative assistance in the preparation of legal papers in cases involving constitutional rights, in particular criminal and habeas corpus cases, as well as other civil rights actions relating to the prisoner's incarceration. *Id.* (citing *Bounds*, 430 U.S. at 824–28). Second, the right of access to the courts prohibits prison officials from erecting any barriers that may impede the inmate's accessibility to the courts. *Id.* (citing *Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992)); *see also Bounds*, 430 U.S. at 822 (citing *Ex parte Hull*, 312 U.S. 546, 549 (1941)).

In order to state a viable claim for interference with his access to the courts, a plaintiff must show actual injury to pending or contemplated litigation. *See Lewis*, 518 U.S. at 349; *Dellis v.*

*Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001); *Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000. In other words, a plaintiff must plead and show that the shortcomings in the prison legal assistance program or lack of legal materials have hindered, or are presently hindering, his efforts to pursue a non-frivolous legal claim. *Lewis*, 518 U.S. at 351–53; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). The United States Supreme Court has strictly limited the types of cases for which there may be an actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis*, 518 U.S. at 355. "Thus, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (en banc). Moreover, the underlying action must have asserted a non-frivolous claim. *Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (discussing that *Lewis* changed actual injury to include requirement that action be non-frivolous).

In addition, the Supreme Court squarely has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. at 353 & n.3). "Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Id.*

Plaintiff contends that restrictions imposed by Defendants interfered with his ability to communicate with and assist counsel. Plaintiff claims that, as a result of that interference, his defense was "unprepared" and lost two hearings, the first on September 19, and the second on

September 24. (Compl., ECF No. 1, PageID.10.) The publicly available docket from the Kalamazoo County District Court suggests that Plaintiff did not lose any remedy as a result of those hearings. In *State of Michigan v. Watts*, No. 2024-2414603FY-FY (Kalamazoo Cnty. Dist. Ct.), on September 24, 2024, an order of *nolle prosequi* was entered with regard to all four of the pending charges. *See* Case Details, *id.*, available at https://micourt.courts.michigan.gov/case-search/ (click continue to agree to terms of service; select Kalamazoo Cnty. 8th Dist. Ct.; enter Last Name "Watts," First Name "Jordan," select search; select Case ID 2024-2414603FY-FY) (last visited June 6, 2025).

Accordingly, because Plaintiff has failed to show any lost remedy, he has failed to state a claim for denial of access to the courts on which relief may be granted.

### 2.    Right to Associate (Claim 2)

Plaintiff contends that, beginning on September 12 and continuing until the date Plaintiff filed his complaint, Defendants Faulk, Dziedzic, and West violated Plaintiff's First Amendment right to associate with friends, family, and other inmates. Plaintiff notes that he was held in an isolation cell and denied incoming mail, telephone privileges, and visitors. (Compl., ECF No. 1, PageID.10.)

Plaintiff's complaint includes many factual allegations that could be construed as some form of interference with the First Amendment right of association. First, Plaintiff alleges that on September 12, 2024, his phone pin was turned off, and he was advised that command had instructed staff to place Plaintiff in isolation. (Compl., ECF No. 1, PageID.5.) Plaintiff balked at being placed in an isolation cell. (*Id.*) Instead, he was placed in segregation. (*Id.*)

The next day, Plaintiff objected to his continued placement in segregation without explanation. Plaintiff was moved to an observation cell in the intake area. (*Id.*, PageID.6.) His

23

resistance to going into that cell resulted in the use of force on September 13, 2024. (*Id.*) He was then placed on suicide watch. (*Id.*, PageID.7.)

The following Monday, Plaintiff was moved to "complete isolation." (*Id.*) Plaintiff remained in "complete isolation" at least until he signed his complaint on October 15, 2024. Plaintiff alleges that Lieutenant Faulk informed Plaintiff that "some detectives and prosecutors that the county works hand in hand with ask[ed] that [Plaintiff] be moved [to complete isolation]." (*Id.*, PageID.9.) Later, in response to Plaintiff's grievances, Defendant Faulk attributed Plaintiff's placement in complete isolation to Plaintiff's behavior. (Oct. 1, 2024, Grievance Resp., ECF No. 1-1, PageID.30; Oct. 7, 2024, Grievance Resp., ECF No. 1-1, PageID.32.)

"Many of the liberties and privileges enjoyed by other citizens must be surrendered by the prisoner." *Overton v. Bazzetta*, 539 U.S. 126, 131 (2003). The Supreme Court has concluded that "freedom of association is among the rights least compatible with incarceration." *Id*.[7] Prison inmates do not retain those First Amendment rights that are "inconsistent with [their] status as [prisoners] or with the legitimate penological objectives of the corrections system." *Jones v. N. Carolina Prisoners' Lab. Union, Inc.*, 433 U.S. 119, 129–33 (1977) (citing *Pell v. Procunier*, 417 U.S. 817, 822 (1974)).

Strictly limiting Plaintiff's freedom of association may well be justified by the security concerns raised after Plaintiff's refusals to enter particular cells at the instruction of jail staff on September 12 and 13. To the extent Plaintiff's isolation was prompted by the officers and

---

[7] Although *Overton* addressed the limits of freedom of association for convicted prisoners, the Supreme Court has made clear that the principle that holds "retained constitutional rights" are limited by "[t]he fact of confinement as well as the legitimate goals and policies of the penal institution," "applies equally to pretrial detainees and convicted prisoners." *Bell v. Wolfish*, 441 U.S. 520, 546 (1979).

prosecutors investigating Plaintiff, that may have been justified as well.[8] Nonetheless, it will be the burden of any remaining Defendants to offer legitimate penological interests to justify the isolation restriction imposed here; it is not Plaintiff's burden to rule out all possible legitimate penological interests. *Cf. Salahuddin v. Goord*, 467 F.3d 263, 274–75 (2d Cir. 2006) (explaining in the context of interference with First Amendment free exercise rights that "[t]he prisoner must show at the threshold that the disputed conduct substantially burdens his sincerely held religious beliefs. Defendant then bears the relatively limited burden of identifying the legitimate penological interests that justify the impinging conduct; the burden remains with the prisoner to show that these [articulated] concerns were irrational" (internal quotation marks, citations, and footnote omitted)).

At this stage of the proceedings, Plaintiff has alleged a limit on his right to freely associate that goes beyond the limits inherent in confinement. However, the only facts Plaintiff alleges with regard to Defendant West and the limitation on Plaintiff's right to associate relate to, first, Defendant West's involvement in Plaintiff's initial placement in the less isolated confines of segregation where Plaintiff was able to communicate with other prisoners, and, second, Defendant West's Step I response to Plaintiff's grievance regarding his isolation. Similarly, the only facts with respect to Defendant Faulk's involvement in Plaintiff's isolation was Faulk's response to Plaintiff's grievances at Steps II and III.

As discussed above, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee*, 199 F.3d at 300. "[A] plaintiff must plead that each Government-official

---

[8] This Court has already concluded that Plaintiff maintained contact with at least one witness after being ordered to have no contact and that Plaintiff was a person of interest, and his brother was a primary suspect, in a missing person investigation. Op. & Order, *United States v. Watts*, No. 1:23-cr-100 (W.D. Mich.) (ECF No. 110, PageID.1040–1045.)

defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has failed to allege that Defendants West or Faulk engaged in any active unconstitutional behavior with respect to Plaintiff's eventual move to complete isolation.

On the other hand, Plaintiff has alleged facts regarding the involvement of Defendant Dziedzic in Plaintiff's initial placement *and* continuation in isolation. Accordingly, although Plaintiff has by no means proven such a claim—and Defendant Dziedzic may well offer a justifying legitimate penological objective—the Court cannot dismiss Plaintiff's First Amendment free association claim against Defendant Dziedzic at this time.

### 3.      Right to Freely Exercise Religion (Claim 3)

Plaintiff contends that Defendants Faulk, Dziedzic, and West violated Plaintiff's First Amendment right to freely exercise his religious practices when they stopped Plaintiff from being able to go to group Bible study and worship services. (Compl., ECF No. 1, PageID.11.) Plaintiff alleges: "I'm a Christian an[d] I take my relig[ion] serious[ly]." (*Id.*)

The Free Exercise Clause of the First Amendment to the United States Constitution provides that "Congress shall make no law . . . prohibiting the free exercise [of religion]." U.S. Const. amend. I; *see also Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940) (holding that the Fourteenth Amendment incorporates the First Amendment's protections against states). "The irreducible core of the first amendment guarantee of the right of free exercise of religious beliefs is the right to practice privately any religion." *Walker v. Mintzes,* 771 F.2d 920, 930 (6th Cir. 1985).

It is well established that prisoners do not lose their First Amendment rights by virtue of their incarceration. *See Cruz v. Beto,* 405 U.S. 319, 322 n.2 (1972). Convicted prisoners retain all First Amendment rights not inconsistent with their status as prisoners. *See Burton v. Nault,* 902 F.2d 4, 5 (6th Cir. 1990); *see also O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987) (noting

that while "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights," inmates clearly retain the First Amendment protection to freely exercise their religion"). However, the rights are not absolute and may be subjected to reasonable restrictions and limitations as necessitated by the circumstances of prison life. *See Abdur-Rahman v. Michigan Dept. of Corr.*, 65 F.3d 489, 491 (6th Cir. 1995) (citing *Bell*, 441 U.S. at 549–51). Thus, "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987).

To establish that this right has been violated, the plaintiff must show that: (1) the belief or practice he seeks to protect is religious within his own "scheme of things," (2) that his belief is sincerely held, and (3) the defendant's behavior infringes upon this practice or belief. *Kent v. Johnson*, 821 F.2d 1220, 1224–25 (6th Cir. 1987). Plaintiff contends that because Defendants placed him in isolation, he was denied the ability to participate in group Bible Study and worship, which he suggests are part of his sincere religious practice. At this stage of the proceedings, the Court accepts as true Plaintiff's allegations regarding his sincerely held religious beliefs, and there is little doubt that group Bible study and worship are common religious practices.

The next consideration is "whether the challenged practice of the prison officials infringes on the religious belief." *Kent*, 821 F.2d at 1224–25. A practice will not be considered to infringe on a prisoner's free exercise unless it "places[s] a substantial burden on the observation of a central religious belief or practice." *Hernandez v. C.I.R.*, 490 U.S. 680, 699 (1989).

"[T]he Supreme Court has made clear that the 'substantial burden' hurdle is high." *Living Water Church of God v. Charter Twp. Of Meridian*, 258 F. App'x 729, 734 (6th Cir. 2007). "[T]he Government substantially burdens an exercise of religion when it 'place[s] substantial pressure on

an adherent to modify his behavior and to violate his beliefs . . . or effectively bar[s] his sincere faith-based conduct.'" *New Doe Child #1 v. Cong. of the U.S.*, 891 F.3d 578, 589 (6th Cir. 2018) (quoting *Haight v. Thompson*, 763 F.3d 554, 565 (6th Cir. 2014)). It "is a is a difficult threshold to cross." *Living Water Church of God*, 258 F. App'x at 736. "[A] 'substantial burden' must place more than an inconvenience on religious exercise." *Id.* at 739 (quoting *Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1227 (11th Cir. 2004)). A particular government action will not be considered a substantial burden merely because it "may make [the] religious exercise more expensive or difficult . . . ." *Id.*

Although Plaintiff notes that he could not attend group Bible study or worship services, he does not identify any other limit on his practice of Christianity during his stay in isolation. Plaintiff does not suggest that he was unable to study the Bible, worship, or pray on his own. It is difficult to discern any pressure, much less substantial pressure, on Plaintiff to modify his behavior or violate his beliefs. Accordingly, the Court concludes that Plaintiff has failed to establish that any Defendant placed a substantial burden on Plaintiff's practice of Christianity. Because Plaintiff has failed to allege facts demonstrating a substantial burden that infringed Plaintiff's practice of his religion, Plaintiff has failed to state a First Amendment free exercise claim on which relief may be granted.

### 4.    Retaliation for Protected Conduct—Lawsuit (Claim 10)

Plaintiff claims that Defendants Sergeant West, Lieutenant Faulk, Lieutenant Dziedzic, and Prosecutor Chelsea Huber violated Plaintiff's rights when they had Plaintiff placed in isolation "as punishment to deter [Plaintiff]" after he and his counsel had told the district court judge that they had filed—or intended to file—complaints and lawsuits for harassment and Fourth Amendment violations. (ECF No. 1, PageID.12.) Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X*, 175 F.3d at 394. In order to set

forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to show that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Plaintiff reports that on September 12, 2024, while at the courthouse, his counsel asked District Court Judge Kathleen Hemmingway to recuse herself because she was named as a defendant in a lawsuit Plaintiff filed on August 19, 2024. (Compl., ECF No. 1, PageID.5.) Plaintiff notes that the lawsuit also named as defendants the Kalamazoo County Sheriff's Office, county detectives, Portage detectives, and federal prosecutors.[9] (*Id.*) It was only upon Plaintiff's return to the jail that he was directed to move to an isolation cell.

There can be little doubt that filing a lawsuit or an administrative complaint regarding a violation of one's constitutional rights is protected conduct. *See, e.g., Bell v. Johnson*, 308 F.3d 594, 607 (6th Cir. 2002) (noting that "[t]he en banc court in *Thaddeus-X* held that [plaintiff's civil rights lawsuit] was protected conduct"). Moreover, placement in more restrictive confinement conditions is the sort of adverse action that might deter a person of ordinary firmness from engaging in protective conduct. *Brown v. Gray*, No. 21-3386, 2022 WL 961246, at *5 (6th Cir.

---

[9] Although Plaintiff describes the lawsuit as having been commenced on August 19, 2024, he has not identified where he filed the lawsuit. On January 13, 2025, this Court received a complaint that matches the description Plaintiff provides. That lawsuit remains pending. *Watts v. Cnty. of Kalamazoo*, No. 1:25-cv-50 (W.D. Mich.). In the complaint, Plaintiff specifically states that the only lawsuit he had filed while incarcerated or detained was the present action. Compl., *id.* (ECF No. 1, PageID.1). But, if Plaintiff filed such a suit on August 19, he was not in jail at that time. It is also possible that Plaintiff is referring to administrative complaints.

Mar. 28, 2022) (noting that "*Hill* and *Thaddeus-X* clearly established that placing a prisoner in administrative segregation and transferring him to a less desirable housing area are adverse actions").

Plaintiff contends that the adverse action was motivated by the lawsuit he had filed (or at least threatened to file) at the court hearing on September 12, 2024. Plaintiff's move to isolation was announced by non-parties Deputy Lopez and Sergeant Baumont and Defendant Sergeant West. (Compl., ECF No. 1, PageID.5.) When Plaintiff questioned the move, they advised Plaintiff that he had not done anything wrong. (*Id*.) Rather, "the order came from command." (*Id*.) Plaintiff balked at moving to a cell where he would be completely isolated; Sergeant Baumont agreed to move Plaintiff to segregation. (*Id*.) Nonetheless, Sergeants Baumont and West advised Plaintiff that there would be no phone, tablet, visits, or anything else; Plaintiff would be on 24-hour lockdown. (*Id*.)

Plaintiff alleges no facts that support the inference that Defendant West (or non-parties Lopez or Baumont) were aware of the lawsuit or threatened lawsuit or that such protected conduct motivated the move. Therefore, Plaintiff has failed to state a First Amendment retaliation claim against Defendant West relating to Plaintiff's initial move to isolation/segregation.

Nor does Plaintiff allege any facts preceding the move to support an inference that "command" was aware of the lawsuit or threatened lawsuit. But Plaintiff does indicate that four days later, on September 16, 2024, community mental health worker Mike told Plaintiff that Lieutenant Dziedzic informed Mike that the move was intended to help "detectives an[d] the prosecutor's office out." (*Id*., PageID.7.) There are a couple of inferential leaps necessary to hold Defendant Dziedzic responsible for a retaliatory adverse action. First, Plaintiff's allegations must support an inference that Defendant Dziedzic is part of the "command" that played a role in

ordering the move and, second, Plaintiff's allegations must support an inference that Defendant Dziedzic knew he was helping carry out a retaliatory adverse action in response to protected conduct. The Court concludes that Plaintiff's allegations permit those inferences. Accordingly, with regard to the initial move to segregation/isolation, the Court cannot dismiss Plaintiff's retaliation claim against Defendant Dziedzic on preliminary review.

Moreover, Plaintiff has alleged facts that support the possibility of a retaliatory motive with regard to Defendant Huber. Specifically, Plaintiff alleges that Huber was present when Plaintiff raised either the filing of, or threat to file, the lawsuit in court on September 12. Then immediately upon Plaintiff's return to the jail, command, apparently at the prosecutor's request, moved Plaintiff to segregation/isolation. Accordingly, with regard to the initial move to segregation/isolation, the Court cannot dismiss Plaintiff's retaliation claim against Defendant Huber on preliminary review.

That leaves Defendant Faulk. Based on Plaintiff's allegations, Defendant Faulk was not involved until October 1, 2024, when, at the second step of the grievance process, he responded to Plaintiff's September 27 grievance regarding the incidents that occurred on September 12 and 13—Plaintiff's initial move to segregation/isolation and the excessive use of force the next day. (*Id.*, PageID.9.) Defendant Faulk told Plaintiff the same thing that Defendant Dziedzic told Mike: that Plaintiff was moved initially at the request of the detectives and prosecutors. (*Id.*) Defendant Faulk indicated further that, after the incident on September 13, Plaintiff was housed based on his conduct. (*Id.*)

Defendant Faulk's only role in relation to the alleged retaliatory initial move to segregation/isolation was his response to Plaintiff's grievance. (ECF No. 1-1, PageID.30, 32.) As explained above, Section 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See*

*Shehee*, 199 F.3d at 300. "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has failed to allege that Defendant Faulk engaged in any active unconstitutional behavior with respect to Plaintiff's initial move to segregation/isolation. Accordingly, Plaintiff fails to state a retaliation claim against Defendant Faulk with regard to that move.

In summary, Plaintiff has failed to state a retaliation claim against Defendants West and Faulk on which relief may be granted with respect to the protected conduct of filing (or threatening) a lawsuit and the adverse action of Plaintiff's initial placement in segregation/isolation. Accordingly the Court will dismiss those claims on preliminary review. The Court cannot dismiss, on preliminary review, Plaintiff's retaliation claims against Defendants Dziedzic and Huber regarding that initial placement in segregation/isolation.

### 5.    Retaliation for Protected Conduct—Grievance (Claim 11)

Plaintiff also contends that Deputy Whisman retaliated against Plaintiff by writing a misconduct report for failure to cooperate with staff and for acts that jeopardized jail safety and security (ECF No. 1-1, PageID.19) two weeks after Plaintiff grieved his initial move to segregation/isolation on September 12 and the excessive use of force by Defendants on September 13, 2024. (Compl., ECF No. 1, PageID.13.) Plaintiff attaches those grievances and the responses to his complaint. (Sept. 17, 2024, Step I Grievance, ECF No. 1-1, PageID.22–23; Sept. 16, 2024, Step I Grievance, ECF No. 1-1, PageID.24–25; Sept. 26, 2024, Step I Grievance Resp., ECF No. 1-1, PageID.26–27; Sept. 27, 2024 Step II Grievances, ECF No. 1-1, PageID.28–29; Oct. 1, 2024 Step II Grievance Resp., ECF No. 1-1, PageID.30; Oct. 1, 2024 Step III Grievance, ECF No. 1-1,

PageID.31; Oct. 7, 2024, Step III Grievance Resp., PageID.31.)[10] Plaintiff also attaches the allegedly retaliatory misconduct report. (Misconduct Violation Form, ECF No. 1-1, PageID.19.)

The filing of a nonfrivolous prison grievance is constitutionally protected conduct for which a prisoner cannot be subjected to retaliation. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000). Moreover, the typical restrictions that might follow a misconduct determination are the sort of punishments that could deter a person from engaging in protected conduct. *See, e.g.*, *Maben v. Thelen*, 887 F.3d 252, 266 (6th Cir. 2018) (stating that "[w]hen deciding whether the issuance of a misconduct ticket rises to the level of an adverse action, we look to both the punishment [the prisoner] could have faced and the punishment he ultimately did face . . . . 'actions that result in more restrictions and fewer privileges for prisoners are considered adverse'" (quoting *Hill*, 630 F.3d at 474)).

The circumstances alleged by Plaintiff are unusual in that he was never punished for the specific acts of misconduct identified in Defendant Whisman's report. The report was filed too late and dismissed for that reason. (Misconduct Violation Form, ECF No. 1-1, PageID.19.) Nonetheless, his behavior on September 12 and September 13 impacted his security level resulting

---

[10] The Court may consider documents that are attached to a *pro se* complaint when considering whether the complaint states a claim upon which relief should be granted. *See, e.g., Powell v. Messary*, 11 F. App'x 389, 390 (6th Cir. 2001) (affirming the Eastern District of Michigan District Court's consideration of the attachments to the plaintiff's complaint to determine that the plaintiff had received medical treatment and, therefore, failed to state a claim under the Eighth Amendment); *Hardy v. Sizer*, No. 16–1979, 2018 WL 3244002 (6th Cir. May 23, 2018) (affirming this Court's consideration of the plaintiff's complaint allegations and the documents attached to the complaint to support the determination that the plaintiff failed to state a claim); *Hogan v. Lucas*, No. 20–4260, 2022 WL 2118213, at *3 n.2 (6th Cir. May 20, 2022) (stating that "[b]ecause the documents attached to Hogan's complaint are referenced in the complaint and 'central to the claims contained therein,' they were properly considered at the § 1915(e)(2) screening stage" (citations omitted)). "When a document attached to the complaint contradicts the allegations, the document trumps the allegations . . . [if the] document . . . 'utterly discredit[s]' the allegations." *In re Flint Water Cases*, 960 F.3d 303, 329 (6th Cir. 2020).

in the additional restrictions of which he complains. (*See* Kite & Resp., ECF No. 1-1, PageID.20; Grievance Responses, ECF No. 1-1, PageID.26–27, 30, 32.)

Although Plaintiff invites an inference that the grievance motivated Defendant Whisman to write the misconduct report, Plaintiff alleges no *facts* to support that inference. Plaintiff states that he was "found not guilty." (ECF No. 1, PageID.13.) The document dismissing the misconduct, however, notes only that Plaintiff was found "not responsible" because the report was filed too late. (Misconduct Violation Form, ECF No. 1-1, PageID.19.) Critically, based on Plaintiff's allegations, the report was not filed until after Defendant West had already denied the grievances. (Grievance Resp., ECF No. 1-1, PageID.26–27.)

Plaintiff suggests that the temporal proximity between the writing of the grievances and the writing of the misconduct report might be enough to support an inference of a retaliatory intent. (ECF No. 1, PageID.12.) U.S. 574, 588 (1998)). In some circumstances, temporal proximity "may be 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.'" *Muhammad v. Close*, 379 F.3d 413, 417–18 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)). However, "[c]onclusory allegations of temporal proximity are not sufficient to show a retaliatory motive." *Skinner v. Bolden*, 89 F. App'x 579, 580 (6th Cir. 2004).

Here, Plaintiff merely alleges the words "temporal proximity" as the only support for his claim of retaliation. Certainly, if the allegation of misconduct were false, that additional fact might support Plaintiff's conclusory allegation. But Plaintiff's allegations clearly show that he took the actions that Defendants Whisman, West, and Faulk concluded were improper. Plaintiff suggests that his resistance and disobedience was justified by his fear of where the jail staff was taking him. (Compl., ECF No. 1, PageID.6 (" When I got to intake, I noticed that the deputies were tak[ing]

34

me to a cell out of view from everyone else. I got scared, tensed up, an[d] sat down").) But there is no question that he disobeyed and resisted. To conclusorily state that Defendant Whisman wrote the misconduct report because of Plaintiff's  grievance when Plaintiff's own factual allegations show that he took the actions that form the basis of the misconduct report is simply insufficient to state the third element of the *Thaddeus-X* analysis. Accordingly, Plaintiff has failed to state a retaliation claim against Defendant Whisman on which relief may be granted.

### F.    Eighth/Fourteenth Amendment Claims

Plaintiff contends that: Defendants violated Plaintiff's Eighth Amendment rights by their deliberate indifference to his serious medical needs, Claims 4 and 5; Defendants violated his Fourteenth Amendment rights by using excessive force, Claims 6 and 7; and violated unspecified constitutional rights by placing Plaintiff in unbearable conditions of confinement, Claim 9. For convicted prisoners, each of those claims would implicate the protections of the Eighth Amendment; however, for pretrial detainees, Plaintiff's protection from those wrongs arises under the Fourteenth Amendment.

The Eighth Amendment protects convicted prisoners from "cruel and unusual punishments." U.S. Const. amend. VIII. But a pretrial detainee "may not be punished prior to an adjudication of guilt in accordance with due process of law." *Bell*, 441 U.S. at 535 (footnote and citations omitted). Put differently, the Eighth Amendment's limit on "punishment" does not apply to a pretrial detainee because a pretrial detainee may not be punished at all. *Id*. at 536–37 (explaining that "the Government concededly may detain him to ensure his presence at trial and may subject him to the restrictions and conditions of the detention facility so long as those conditions and restrictions do not amount to punishment"). When a claim of deliberate indifference "is asserted on behalf of a pretrial detainee, the Due Process Clause of the Fourteenth Amendment

is the proper starting point." *Griffith v. Franklin Cnty.*, 975 F.3d 554, 566 (6th Cir. 2020) (internal quotation marks and citations omitted).

Until recently, whether the Court considered claims like Plaintiff's Claims 4–7 and 9 under the Eighth Amendment or the Fourteenth Amendment did not make a difference because the Sixth Circuit "analyzed Fourteenth Amendment pretrial detainee claims and Eighth Amendment prisoner claims 'under the same rubric.'" *Greene v. Crawford Cnty.*, 22 F.4th 593, 605 (6th Cir. 2022) (quoting *Brawner v. Scott Cnty.*, 14 F.4th 585, 591 (6th Cir. 2021)). However, in *Kingsley v. Hendrickson*, 576 U.S. 389 (2015), in the context of considering a pretrial detainee's claim for the use of excessive force—like Plaintiff's Claims 6 and 7—the Supreme Court concluded that application of the Eighth Amendment standard—requiring that the "[pretrial] detainee must show that the officers were *subjectively* aware that their use of force was unreasonable"—was not appropriate. 576 U.S. at 391–92. Instead, the Supreme Court held that a "detainee must show only that the force purposely or knowingly used against him was objectively unreasonable." *Id*. at 396–97.

In *Brawner*, the Sixth Circuit concluded that the modification of the subjective component that *Kingsley* applied in the excessive force context was appropriately applied to deliberate-indifference claims—like Plaintiff's claims 4, 5, and 9.[11] The *Brawner* court described the

---

[11] Courts have described "conditions of confinement" claims and "medical claims" as "deliberate indifference" claims. *See, e.g.*, *Rafferty v. Trumbull Cnty., Ohio*, 915 F.3d 1087, 1097 (6th Cir. 2019) ("Furthermore, it was clearly established in 2014 that ignoring known risks of harm to an inmate due to inadequate medical care, inhumane conditions of confinement, or abuse by another inmate could constitute deliberate indifference."); *Kemp v. Fulton Cnty.*, 27 F.4th 491, 495 (7th Cir., 2022) ("Recognizing the Supreme Court's 'signal[ ] that courts must pay careful attention to the different status of pretrial detainees' as compared with convicted offenders, we have applied *Kingsley*'s objective unreasonableness test to other Fourteenth Amendment claims, including challenges to inadequate medical care and other conditions of pretrial confinement." (citations omitted)); *Darnell v . Pineiro*, 849 F.3d 17, 35 (2d Cir. 2017) ("The same objective analysis should apply to an officer's appreciation of the risks associated with an unlawful condition of confinement

modification as a shift from the criminal recklessness standard adopted for the subjective element of an Eighth Amendment claim in *Farmer v. Brennan*, 511 U.S. 825 (1994), in favor of a "civil standard for recklessness," *Brawner*, 14 F.4th at 596. *Farmer* described that civil standard as follows: "[t]he civil law generally calls a person reckless who acts or (if the person has a duty to act) fails to act in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known." *Farmer*, 511 U.S. at 836; *see also Howell v. NaphCare, Inc*., 67 F.4th 302, 311 (6th Cir. 2023) (explaining that "[a]pplying *Kingsley*'s reasoning, *Brawner* held that a pretrial detainee must make a showing . . . that each defendant acted deliberately [and] also recklessly in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known" (internal quotation marks, footnote, and citations omitted)). This is a "distinction with[] a difference." *Howell*, 67 F.4th at 311.

The Sixth Circuit's most recent statement of the subjective standard for deliberate indifference claims under the Due Process Clause of the Fourteenth Amendment requires the plaintiff to show "that each defendant 'acted deliberately (not accidentally), [and] also recklessly "in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known.'" *Helphenstine v. Lewis Cnty., Ky*, 60 F.4th 305, 317 (6th Cir. 2023) (quoting *Brawner*, 14 F.4th at 596), *cert. denied sub nom. Lewis Cnty., Ky., v. Helphenstine*, 144 S. Ct. 692 (2024). It is against that backdrop that the Court will address Plaintiff's excessive force and deliberate indifference claims.

---

in a claim for deliberate indifference under the Fourteenth Amendment. A pretrial detainee may not be punished at all under the Fourteenth Amendment, whether through the use of excessive force, by deliberate indifference to conditions of confinement, or otherwise.").

1. **Deliberate Indifference to Serious Medical Need—Lack of Available Healthcare on Weekends (Claim 4)**

Plaintiff's Claim 4 reads as follows:

Kalamazoo County, Sheriff Richard Fuller and Captain Beers [were] deliberately indifferent to [Plaintiff's] serious medical needs when they failed to have a policy to ensure a nurse or doctor would be available on the weekends and didn't take any measures to abate the serious harm caused by having to wait all weekend to see a nurse. It's common practice[] for medical not to be at Kalamazoo County Jail on the weekends. I still have not been taken to the hospital or x-ray'd. I think they are trying to cover up the excessive force.

(Compl., ECF No. 1, PageID.11.) As noted above, Plaintiff has failed to state a claim on which relief may be granted against Kalamazoo County because Plaintiff failed to allege that Kalamazoo County had a policy the enforcement of which caused Plaintiff's injury.

 "[T]he finding of a policy or custom is the initial determination to be made in any municipal liability claim." *Claiborne Cnty.*, 103 F.3d at 509. Further, the policy or custom must be the moving force behind the constitutional injury, and a plaintiff must identify the policy, connect the policy to the governmental entity, and show that the particular injury was incurred because of the execution of that policy. *Turner*, 412 F.3d at 639; *Claiborne Cnty.*, 103 F.3d at 508–09.

A policy includes a "policy statement, ordinance, regulation, or decision officially adopted and promulgated" by the sheriff's department. *See Monell*, 436 U.S. at 690. Moreover, the Sixth Circuit has explained that a custom "for the purposes of *Monell* liability must be so permanent and well settled as to constitute a custom or usage with the force of law." *Claiborne Cnty.*, 103 F.3d at 507. "In short, a 'custom' is a 'legal institution' not memorialized by written law." *Id.*

Plaintiff's complaint, however, faults the County, the Sheriff, and Captain Beers for ___*not*___ having a policy. Moreover, Plaintiff fails to identify a permanent or well-settled custom; instead he notes that it was a "common practice" for medical staff to not be at the jail over the weekend.

(Compl., ECF No.1, PageID.11.) Additionally, Plaintiff fails to identify what injury resulted from the absence of medical personnel over the weekend. When Plaintiff saw the nurse, she advised him that the hospital could offer nothing for the rib injuries of which Plaintiff complained other than pain relievers, as the jail staff had done. Plaintiff makes no factual allegation that is contrary to the nurse's statement.

Finally, measured against the showing required by *Helphenstine*, Plaintiff has failed to allege facts that support an inference that either Defendant Fuller or Defendant Beers knew that Plaintiff was injured, knew that Plaintiff was subject to a substantial risk of harm, knew that Plaintiff had a serious medical need, or should have known of any injury, risk of harm, or serious medical needs. In short, Plaintiff has failed to state a deliberate indifference claim against Defendants Fuller or Beers on which relief may be granted.

### 2.    Deliberate Indifference to Serious Medical Need On September 13 and 16 (Claim 5)

Plaintiff next contends that: Defendant Jelsomeno was deliberately indifferent to Plaintiff's serious medical need on September 13, after the alleged use of excessive force, when Plaintiff complained of pain and Jelsomeno only offered Plaintiff pain medication and did not send Plaintiff to the hospital; and Defendant McMillon was deliberately indifferent to Plaintiff's serious medical need on the following Monday, September 16, when Plaintiff asked to see medical but never did— instead, he was seen by community mental health "Mike." (Compl., ECF No. 1, PageID.7.)

The Fourteenth Amendment's due process protections against deliberate indifference to serious medical needs for pretrial detainees "are at least as great as the Eighth Amendment protections available to a convicted prisoner." *Griffith*, 975 F.3d at 566 (quoting *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983)). The floor set by the Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such

care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104–05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

Deliberate indifference may be manifested by a doctor's failure to respond to the medical needs of a prisoner, or by "prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Estelle*, 429 U.S. at 104–05. Under the Eighth Amendment, a claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer*, 511 U.S. at 834. To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008).

Obviousness, however, is not strictly limited to what is detectable to the eye. Even if the layman cannot see the medical need, a condition may be obviously medically serious where a layman, if informed of the true medical situation, would deem the need for medical attention clear. *See, e.g.*, *Rouster v. Saginaw Cnty.*, 749 F.3d 437, 446–51 (6th Cir. 2014) (holding that a prisoner who died from a perforated duodenum exhibited an "objectively serious need for medical treatment," even though his symptoms appeared to the medical staff at the time to be consistent with alcohol withdrawal); *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (holding that

prisoner's severed tendon was a "quite obvious" medical need, since "any lay person would realize to be serious," even though the condition was not visually obvious). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted), *abrogation on other grounds recognized by Lawler as next friend of Lawler v. Hardiman Cnty., Tenn.*, 93 F.4th 919 (6th Cir. 2024).

The objective prong of the Eighth Amendment standard for deliberate indifference to a serious medical need is the same in the Fourteenth Amendment due process context. Neither *Kingsley* nor the Sixth Circuit cases applying *Kingsley* have changed the objective prong of the analysis. *See, e.g.*, *Westmoreland v. Butler Cnty. Ky.*, 29 F.4th 721, 729 (6th Cir. 2022) (noting that the Fourteenth Amendment deliberate indifference analysis includes the same objective test as the Eighth Amendment deliberate indifference analysis set forth in *Farmer*, 511 U.S. at 834); *Hyman v. Lewis,* 27 F.4th 1233, 1237 (6th Cir. 2022) (noting that "*Brawner* left the 'objectively serious medical need' prong untouched"); *Greene*, 22 F.4th at 607 (applying *Farmer*'s objective test to a Fourteenth Amendment claim for deliberate indifference to a serious medical need).

Plaintiff does not specifically identify the nature of his "serious medical need," nor does Plaintiff identify the nature of the treatment he claims he was denied. Plaintiff describes the following injuries following the use of excessive force on September 13: swollen throat, aching lower back, swollen ankle, cut wrist, and bruised ribs. (Compl., ECF No. 1, PageID.7.) Nonetheless, Plaintiff has not alleged facts that support the inference that he was subjected to a substantial risk of serious harm in the absence of medical treatment. Even if Plaintiff's swelling

and bruising was obvious, that does not necessarily mean that Plaintiff demonstrated a serious need for medical treatment. "[C]uts, bruising, and swelling" can be "superficial, non-serious physical conditions, which generally do not warrant medical treatment." *Burgess v. Fischer*, 735 F.3d 462, 477 (6th Cir. 2013).

Although Plaintiff complains that he was not provided with treatment, he does not suggest what treatment he required, nor does he suggest any consequence of not receiving treatment; consequences that might bolster his claim that treatment was obviously needed. Bruising and swelling are conditions that might well resolve on their own. *See, e.g.*, *Larkin v. Schroeder*, No. 2:20-cv-111, 2020 WL 4344985, at *5 (W.D. Mich. July 29, 2020) (noting that it was "difficult to infer a serious medical needs from the facts Plaintiff ha[d] alleged . . . Plaintiff does not suggest that his bruising or headache did not resolve on their own"). Plaintiff alleges that his ankle was stiff,[12] his throat was "tender and sore," and his back was "in pain" when he filed the complaint. (Compl., ECF No. 1, PageID.14.) He also notes his belief that the ankle "healed wrong" and his ribs were broken. (*Id.*) Yet Plaintiff has still not alleged facts that support an inference that he presented a serious medical need to Defendants Jelsomeno or McMillon. For that reason, Plaintiff has failed to state a claim for deliberate indifference to a serious medical need on which relief may be granted.

### 3. Failure to Protect—Lack of Policy or Training to Prevent the Use of Excessive Fore (Claim 6)

Claim 6 is another claim raised against only Kalamazoo County, Sheriff Fuller, and Captain Beers. The claim is stated as follows:

---

[12] Although Plaintiff notes that his ankle was pulled during the September 13 use of force, (Compl., ECF No. 1, PageID.6), Plaintiff's ankle injury was self-inflicted. Shortly before the incident in the intake area, while he was kicking the door in his segregation cell in protest, he "accidentally twisted [his] ankle." (*Id.*)

> Kalamazoo County, Sheriff Richard Fuller, [and] Captain Beers violated by Fourteenth Amendment rights when they failed to create a policy, failed to train, an[d] ha[ve] let the jail staff make it a practice to use excessive force on detainees who passively resist or [who are] not resisting at all, and let this detainee be subjected to excessive force knowing the failure to properly train, create a policy and practices created a substantial risk of serious harm.

(Compl., ECF No. 1, PageID.11.) Plaintiff's conclusory allegations fall short. As the Sixth Circuit has explained:

> A failure-to-train claim, however, requires a showing of "'prior instances of unconstitutional conduct demonstrating that the [municipality] ha[d] ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury.'" *Miller v. Sanilac Cnty*., 606 F.3d 240, 255 (6th Cir.2010) (quoting *Fisher v. Harden,* 398 F.3d 837, 849 (6th Cir.2005)). Similarly, a custom-of-tolerance claim requires a showing that there was a pattern of inadequately investigating similar claims. See Thomas, 398 F.3d at 433; *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1248 (6th Cir.1989).

*Burgess*, 735 F.3d at 478. The only facts Plaintiff alleges regarding the use of excessive force relate to the use of force on September 13. Plaintiff's allegations are insufficient to support an inference of a policy of using excessive force, a practice of using excessive force, a failure to train regarding the appropriate use of force, or authorization, approval, or acquiescence to the quantum of force that was used on September 13". Accordingly, Plaintiff has failed to state a claim against these Defendants regarding their liability for the September 13 use of force on which relief may be granted.

### 4.    Use of Excessive Force on September 13 (Claim 7)

Plaintiff also alleges that Defendants Jelsomeno, Crump, Ensor, Whisman, McKenzie, and Marshall used excessive force against Plaintiff during the September 13 incident.

In the context of a use of force against a convicted prisoner, the Eighth Amendment prohibits conditions of confinement which, although not physically barbarous, "involve the unnecessary and wanton infliction of pain." *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981) (quoting *Gregg v. Georgia*, 428 U.S. 153, 183 (1976)). There is an objective component and a

subjective component to an excessive force Eighth Amendment claim. *Santiago v. Ringle*, 734 F.3d 585, 590 (6th Cir. 2013) (citing *Comstock*, 273 F.3d at 693). First, "[t]he subjective component focuses on the state of mind of the prison officials." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011). We ask, "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). Second, "[t]he objective component requires the pain inflicted to be 'sufficiently serious.'" *Williams*, 631 F.3d at 383 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)).

*Kingsley* changed the subjective component to another objective component when a pretrial detainee claims he was subjected to an excessive use of force. In *Kingsley*, the United States Supreme Court held that a "detainee must show only that the force purposely or knowingly used against him was objectively unreasonable." *Id.*, 576 U.S. at 396–97. In *Cretacci v. Call*, 988 F.3d 860 (6th Cir. 2021), the Sixth Circuit explained the proper application of the new objective component:

> "[O]bjective reasonableness turns on the 'facts and circumstances of each particular case,'" *id*. at 397 (quoting *Graham*, 490 U.S. at 396), including
>
>> the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.
>
> *Id*. Courts must make this totality-of-the-circumstances determination based on what a reasonable officer on the scene knew at the time and account for the jail's legitimate interest in maintaining their facility, "deferring to 'policies and practices that . . . are needed to preserve internal order and discipline and to maintain institutional security.'" *Id*. (quoting *Bell v. Wolfish*, 441 U.S. 520, 540(1979)).

*Id.* at 869.

Plaintiff's allegations make clear that the Defendants had some cause to use force on September 13. Plaintiff refused to go into the cell where he was directed to go; instead, Plaintiff

"tensed up and sat down." (Compl., ECF No. 1, PageID.6.) The Defendants then used force to compel Plaintiff's compliance. Plaintiff claims that he did not resist and, for that reason, the force used was excessive.[13] Plaintiff's allegations at least permit the inference that Defendants' use of force strayed outside the bounds of an objectively reasonable response. Accordingly, the Court cannot dismiss this use of excessive force claim at this time.

### 5.    Conditions of Confinement in Segregation/Isolation (Claims 8 & 9)

Plaintiff's final "deliberate indifference" claim, Claim 9, concerns the conditions of his confinement in isolation beginning on September 16, 2024, and continuing, apparently, at least until Plaintiff signed his complaint on October 15, 2024. Plaintiff contends that Defendants Kalamazoo County, Sheriff Richard Fuller III, Captain Beers, Sergeant West, Lieutenants Faulk and Dziedzic, and Prosecutors Huber and Russell: "violated [Plaintiff's] rights when they had [him] placed in a cold filthy cell for 24 hours a day with no access to friends, family, other inmates, recreation, church, phones, [and] visits." (Compl., ECF No. 1, PageID.12.)

To prevail on an Eighth Amendment claim, a convicted prisoner must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer*, 511 U.S. at 834 (applying deliberate indifference standard to medical

---

[13] Plaintiff describes particular uses of force in factual allegations. When stating this particular claim, he also notes that some of the Defendants "failed to intervene." (Compl., ECF No. 1, PageID.11.) An officer might be liable for failing to intervene to stop another officer's use of excessive force where the defendant "'observed or had reason to know that excessive force would be or was being used' *and* 'had both the opportunity and the means to prevent the harm from occurring.'" *Burgess*, 735 F.3d at 475 (quoting *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *accord Alexander v. Carter ex. rel. Byrd*, 733 F. App'x 256, 265 (6th Cir. 2018); *Partin v. Parris*, No. 17-6172, 2018 WL 1631663, at *3 (6th Cir. Mar. 20, 2018). The Court concludes that Plaintiff's allegations regarding the September 13 failures to intervene are not properly dismissed on preliminary review.

claims)); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837.

As set forth above with regard to medical claims, the subjective prong is altered when the confined party is a pretrial detainee. In that context, based on the authorities cited above, it would be enough for the pretrial detainee to show that the official "should have known" of the risk. *See, e.g.*, *Lawler*, 94 F.4th at 927 (explaining that "[p]retrial detainees need only prove that the officers *recklessly disregarded* a risk so obvious that they either knew or should have known of it").

Considering Plaintiff's "conditions of confinement" claim by working backwards from the Eighth Amendment variant—i.e., changing deliberate indifference to include "should have known"—does not support the conclusion that Plaintiff has stated a claim. Although Plaintiff may have adequately alleged that he did not like the conditions he faced in isolation, he has not alleged facts that support an inference that he was subject to "an excessive risk to inmate health or safety" by virtue of those conditions.

But there are other ways to view Plaintiff's "conditions of confinement" claim. The constitutional protection at issue for pretrial detainees arises from the Due Process Clause of the Fourteenth Amendment. Viewing a pretrial detainee's "conditions" claim under the Fourteenth

Amendment as a variation of a convicted prisoner's "change in conditions of confinement" Fourteenth Amendment due process claim might provide a stronger analytical framework.[14]

The elements of a procedural due process claim are (1) a life, liberty, or property interest requiring protection under the Due Process Clause, and (2) a deprivation of that interest (3) without adequate process. *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006). "Without a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)).

For a convicted prisoner, the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). In *Sandin v. Conner*, the Supreme Court set forth the standard for determining when

---

[14] Plaintiff specifically invites this approach in Claim 8, (Compl., ECF No. 1, PageID.12), where he contends that imposing the isolation conditions violated his procedural due process rights. The analysis regarding the procedural due process protections is exactly the same whether considered under Claim 8 or Claim 9. But, in Claim 8, Plaintiff alleges that imposing the extreme isolation also violated his substantive due process rights. "Substantive due process . . . serves the goal of preventing governmental power from being used for purposes of oppression, regardless of the fairness of the procedures used." *Pittman v. Cuyahoga Cnty. Dep't of Child. & Fam. Servs.*, 640 F.3d 716, 728 (6th Cir. 2011) (quoting *Howard v. Grinage*, 82 F.3d 1343, 1349 (6th Cir. 1996)). Specifically, "[s]ubstantive due process 'prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty.'" *Prater v. City of Burnside*, 289 F.3d 417, 431 (6th Cir. 2002) (quoting *United States v. Salerno*, 481 U.S. 739, 746 (1987)). "Conduct shocks the conscience if it 'violates the decencies of civilized conduct.'" *Range v. Douglas*, 763 F.3d 573, 589 (6th Cir. 2014) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846–47 (1998)). "Where a particular [a]mendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that [a]mendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.'" *Albright*, 510 U.S. at 273–75 (quoting *Graham v. Connor*, 490 U.S. 386, 394 (1989)). If such an amendment exists, the substantive due process claim is properly dismissed. *See Heike v. Guevara*, 519 F. App'x 911, 923 (6th Cir. 2013). Plaintiff is already protected from government behavior that "violates the decencies of civilized conduct" by the deliberate indifference standard of the Eighth Amendment as broadened by the Fourteenth Amendment under *Kingsley* and *Brawner*. Accordingly, the Court concludes that Plaintiff has failed to state a claim for violation of his Fourteenth Amendment substantive due process rights.

a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. 515 U.S. 472, 484 (1995). According to that Court, a prisoner is entitled to the protections of due process only when the change in conditions "will inevitably affect the duration of his sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id*. at 486–87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790–91 (6th Cir. 1995). Without a protected liberty interest, a plaintiff cannot successfully claim that his due process rights were violated because "[p]rocess is not an end in itself." *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983). For example, in *Sandin*, the Court held that regardless of the mandatory language of the prison regulations, the inmate did not have a liberty interest because his placement in administrative segregation did not constitute an atypical and significant hardship within the context of his prison life. *Sandin*, 515 U.S. at 484; *see also Mackey v. Dyke*, 111 F.3d 460, 463 (6th Cir. 1997).

Plaintiff's allegations do not suggest that his move to segregation/isolation will have any impact on the duration of his stay in pretrial detention. As to the second category, however, Plaintiff has alleged facts that, in the language of *Sandin*, support the conclusion that being so completely isolated is an "atypical and significant" deprivation. *Sandin*, 515 U.S. at 484.

There is some question as to whether *Sandin* provides the proper measure for changes in the conditions of confinement for pretrial detainees.[15] Arguably, *Sandin*'s hardship test is flexible

---

[15] In *Johnson v. Grayson Cnty, Ky. Detention Center*, No. 21-5772, 2022 WL 3479501 (6th Cir. May 7, 2022), the Sixth Circuit explained:

> [S]everal of our sister circuits have held that *Sandin*'s "atypical and significant hardship" standard does not govern procedural due process claims brought by pretrial detainees such as Johnson. . . . In the Sixth Circuit, however, we have no precedent deciding this issue either way.

Id. at *2 (citation omitted).

enough to address the conditions of confinement for pretrial detainees. For convicted prisoners, the test considers whether the deprivation is atypical and significant in relation to the normal incidents of prison life for convicted prisoners; for pretrial detainees, the test could evaluate whether the deprivation is atypical and significant in relation to the normal incidents of life in pretrial detention.

Notably, in *Sandin*, the Supreme Court concluded that placement in segregation for 30 days did not impose an atypical and significant hardship. *Id*. Similarly, the Sixth Circuit has held that placement in administrative segregation for two months does not require the protections of due process. *See Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010) (finding that 61 days in segregation is not atypical and significant). Instead, generally only periods of segregation lasting for several years or more have been found to be atypical and significant. *See, e.g., Selby v. Caruso*, 734 F.3d 554, 559 (6th Cir. 2013) (concluding that thirteen years of segregation implicates a liberty interest); *Harris v. Caruso*, 465 F. App'x 481, 484 (6th Cir. 2012) (finding that eight years of segregation implicates a liberty interest); *Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008) (remanding to the district court to consider whether the plaintiff's allegedly "indefinite" period of segregation, i.e., three years without an explanation from prison officials, implicates a liberty interest).

Nonetheless, Plaintiff's factual allegations support an inference that the extreme isolation imposed on him is "atypical and significant" compared to the ordinary incidents of pretrial detention. Because the "atypical and significant" change in conditions was imposed with no process at all, considered under *Sandin*, the Court concludes that Plaintiff's "conditions of confinement" claim is not properly dismissed on preliminary review.

The federal circuit courts that have rejected *Sandin*'s hardship test for pretrial detainees look instead to whether the deprivation is "punishment." *Dilworth*, 841 F.3d at 252. In that regard, Plaintiff insists that he had not committed any infraction that warranted the imposition of the isolated conditions he endured. It is not necessarily true that Plaintiff had to be found guilty of a particular misconduct before the conditions of his confinement could change. For example, generally a security classification decision is not considered punishment. *See, e.g.*, *Martucci v. Johnson*, 944 F.2d 291, 293–94 (6th Cir. 1991) (holding that classifying a pretrial detainee to segregation was not a punishment); *Shuler v. Hall*, No. 3:18-cv-01223, 2019 WL 1777899, at *3 (M.D. Tenn. Apr. 23, 2019) (noting that a security classification decision for a pretrial detainee is neither an atypical and significant hardship nor a punishment); *Jermano v. Taylor*, No. 11-10739, 2012 WL 4009865, at *5 (E.D. Mich. July 30, 2012) ("[A] prisoner does not have a protected liberty interest in the procedures affecting her classification and security . . . [t]he fact that Plaintiff was a pretrial detainee rather than a convicted prison[er] at the time of the alleged misfeasance does not change the analysis.").

The facts alleged by Plaintiff suggest that his stay in isolation may be a security classification decision. However, the facts alleged are ambiguous in that Defendants have provided Plaintiff with many different possible reasons for his placement in isolation. Accordingly, the Court concludes that Plaintiff's allegations also support an inference that he has been placed in isolation as "punishment" for his behavior on September 13 or for his lawsuit against the detectives, judge, and prosecutors. Thus, even if *Sandin* does not apply to this due process claim, Plaintiff's claim is not properly dismissed at this time.

Even though Plaintiff's allegations may suffice to state a claim, the allegations do not support the conclusion that Plaintiff has stated a claim against each of the Defendants on Plaintiff's

scatter-shot list of alleged violators. As noted above with regard to Plaintiff's other claims, Defendant Kalamazoo County, as a municipality, is only liable for a constitutional violation committed by its employees "when a policy or custom of that government caused the injury in question." *Lipman*, 974 F.3d at 747. Plaintiff has not alleged that his injury resulted from a county policy or custom; to the contrary, Plaintiff alleges that Defendants "failed to . . . create polic[ies] to protect against these punitive acts." (Compl., ECF No. 1, PageID.12.)

Plaintiff alleges no facts regarding the involvement of Defendants Fuller or Beers in the decision to place Plaintiff in isolation. Instead, he seems to rely entirely on their supervisory position over the other officers in the department. As explained above, Plaintiff must allege active involvement in the violation to state a claim against a particular defendant. Plaintiff fails to allege any active involvement on the part of Defendants Fuller and Beers.

Similarly, Plaintiff's allegations against Defendants West and Faulk do not support an inference that those Defendants played an active role in Plaintiff's placement or continued stay in isolation. Instead, Plaintiff alleges that those Defendants did not correct the alleged violations of others when they responded to Plaintiff's grievances.[16] As explained above, simply responding to a grievance does not give rise to liability under § 1983.

With regard to Defendants Dziedzic and Huber, however, as explained above, Plaintiff's allegations support inferences of sufficiently active involvement to state this due process claim.

---

[16] Defendant West was also one of the officers who participated in placing Plaintiff in a segregation cell—but not isolation—on September 12, 2024. Nonetheless, Plaintiff's allegations do not support an inference that Defendant West was involved in the decision to "punish" Plaintiff or to place Plaintiff in the extreme isolation imposed on and after September 16, 2024. Defendant West's only involvement with the extreme isolation was his response to Plaintiff's grievances.

### G.    Claims Against Defendant Cattes

Plaintiff names Defendant Cattes in the complaint caption and in the list of parties. (Compl., ECF No. 1, PageID.1, 3.) He also mentions Defendant Cattes once in the factual allegations. (*Id.*, PageID.9 ("I then talked to Sgt Cattes who told me he will look at my court transcripts and if the courts don't care about where I'm house[d], he doesn't either").) Nonetheless, Plaintiff does not include Defendant Cattes as a person who violated Plaintiff's rights in any of the carefully delineated eleven claims. Moreover, the facts Plaintiff alleges regarding Defendant Cattes are innocuous. No matter how liberally the Court construes Plaintiff's allegations Plaintiff has failed to state a claim against Defendant Cattes on which relief may be granted.

### H.    Plaintiff Seeks Relief that is Not Available Under § 1983

Plaintiff seeks damages, declaratory relief, and injunctive relief. Included in the injunctive relief Plaintiff seeks is a request "to be released on bond." (Compl., ECF No. 1, PageID.15.) Plaintiff contends that his continued detention is not lawful. When a prisoner challenges the fact or duration of his confinement, his sole remedy is a petition for habeas corpus. *See Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973) (discussing that the essence of habeas corpus is an attack by a person in custody upon the legality of that custody and the traditional function of the writ is to secure release from illegal custody); *see also Heck v. Humphrey*, 512 U.S. 477, 481 (1994) ("[H]abeas corpus is the exclusive remedy for a state prisoner who challenges the fact or duration of his confinement and seeks immediate or speedier release, even though such a claim may come within the literal terms of [42 U.S.C.] § 1983."). The Sixth Circuit has elaborated on when a prisoner must use habeas corpus under these authorities:

> A clear and consistent two-part rule emerges from this precedential backdrop. Prisoners can "use only habeas corpus" if "they seek to invalidate the duration of their confinement—either directly through an injunction compelling speedier release or indirectly through a judicial determination that necessarily implies the

unlawfulness of the State's custody." *Wilkinson* [*v. Dotson*], 544 U.S. [74,] 81, 125 S. Ct. 1242 [(2005)].

*Kitchen v. Whitmer*, 106 F.4th 525, 539 (6th Cir. 2024). Plaintiff is pursuing the first *Kitchen* option. He explicitly seeks immediate release. That relief is not available under § 1983. Accordingly, Plaintiff has failed to state a claim on which that relief may be granted.

## IV.    Request for Preliminary Injunction

In addition to the requests for injunctive relief in the complaint, Plaintiff has recently filed a motion seeking a temporary restraining order and a preliminary injunction compelling Defendant Fuller from isolating Plaintiff through the disciplinary or classification system. (Mot., ECF No. 9, PageID.77–78.) Preliminary injunctions are "one of the most drastic tools in the arsenal of judicial remedies." *Bonnell v. Lorenzo*, 241 F.3d 800, 808 (6th Cir. 2001) (quoting *Hanson Trust PLC v. ML SCM Acquisition Inc.*, 781 F.2d 264, 273 (2d Cir. 1986)). And Plaintiff's request for relief is particularly broad.

The issuance of preliminary injunctive relief is committed to the discretion of the district court. *See Ne. Ohio Coal. v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006); *Nader v. Blackwell*, 230 F.3d 833, 834 (6th Cir. 2000). In exercising that discretion, a court must consider whether plaintiff has established the following elements: (1) a strong or substantial likelihood of success on the merits; (2) the likelihood of irreparable injury if the preliminary injunction does not issue; (3) the absence of harm to other parties; and (4) the protection of the public interest by issuance of the injunction. *Nader*, 230 F.3d at 834. These factors are not prerequisites to the grant or denial of injunctive relief, but factors that must be "carefully balanced" by the district court in exercising its equitable powers. *Frisch's Rest., Inc. v. Shoney's, Inc.*, 759 F.2d 1261, 1263 (6th Cir. 1985); *see also S. Galzer's Distribs. of Ohio, LLC v. Great Lakes Brewing Co*., 860 F.3d 844, 849 (6th Cir. 2017) ("[T]hese are factors to be balanced, not prerequisites to be met."); *Nat'l Viatical, Inc. v.*

*Universal Settlements Int'l, Inc.*, 716 F.3d 952, 956 (6th Cir. 2013) (same); *Ne. Ohio Coal.*, 467 F.3d at 1009 (same); *Nader*, 230 F.3d at 834 (same). "But even the strongest showing on the other three factors cannot 'eliminate the irreparable harm requirement.'" *D.T. v. Sumner Cnty. Sch.*, 942 F.3d 324, 326–27 (6th Cir. 2019) (quoting *Friendship Materials, Inc. v. Mich. Brick, Inc.*, 679 F.2d 100, 105 (6th Cir. 1982)).

Moreover, where a prison inmate seeks an order enjoining state prison officials, the court is required to proceed with the utmost care and must recognize the unique nature of the prison setting. *See Glover v. Johnson*, 855 F.2d 277, 286 (6th Cir. 1988); *Kendrick v. Bland*, 740 F.2d 432, 438 & n.3 (6th Cir. 1984). The party seeking injunctive relief bears a heavy burden of establishing that the extraordinary and drastic remedy sought is appropriate under the circumstances. *See Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002); *Stenberg v. Cheker Oil Co.*, 573 F.2d 921, 925 (6th Cir. 1978). Preliminary injunctions are not favored, and a movant is not necessarily entitled to such relief, even if the movant has shown likelihood of success on the merits. *Benisek v. Lamone*, 585 U.S. 155, 158 (2018).

Under controlling Sixth Circuit authority, Plaintiff's "initial burden" in demonstrating entitlement to preliminary injunctive relief is a showing of a strong or substantial likelihood of success on the merits of his § 1983 action. *NAACP v. Mansfield*, 866 F.2d 162, 167 (6th Cir. 1989). Plaintiff has not made such a showing. As set forth above, the only claims that remain are: a claim that Plaintiff's placement in isolation may violate his First Amendment right to associate; a claim that Plaintiff may have been placed in isolation in retaliation for his First Amendment protected conduct of filing a lawsuit; an excessive force claim based on an event that occurred more than nine months ago; and a deliberate indifference claim regarding the conditions Plaintiff faced and/or faces in isolation. Accepting all of Plaintiff's factual allegations as true, and liberally construing

54

his *pro se* complaint, the Court cannot dismiss those claims on preliminary review. But all of Plaintiff's other allegations fail to state a cognizable claim.

The standard for dismissal on preliminary review sets a much lower bar than is required to show a substantial likelihood of success on the merits. Indeed, interference with the right to associate may ultimately be justified by a legitimate penological objective. Such a legitimate penological objective might also undercut Plaintiff's claim that his placement in isolation was motivated by a desire to retaliate for Plaintiff's filing of a lawsuit or that Defendants should have known that Plaintiff's isolation would create a substantial risk of serious harm. Similarly, Plaintiff's claim that Defendants' response to Plaintiff's resistance to enter a cell at Defendants' direction involved more force than was necessary will undoubtedly be countered with conflicting factual accounts from Defendants regarding the need for force and the amount of force necessary to restore order.

Preliminary review under the PLRA is premised on presumptions that Plaintiff's allegations are true. Consideration of a request for preliminary injunctive relief is not. Although the Court makes no final determination on this issue, it appears at this preliminary stage that Plaintiff has not made a substantial showing of a violation of his First or Fourteenth Amendment rights.

Moreover, the presence of irreparable harm is not evident. A plaintiff's harm from the denial of a preliminary injunction is irreparable only if it is not fully compensable by monetary damages. *See Overstreet*, 305 F.3d at 578; *see also D.T.*, 942 F.3d at 326 (holding that, absent a showing of irreparable harm, a preliminary injunction is not appropriate, regardless of the strength of the other factors). Plaintiff has not set forth specific facts showing immediate, concrete, non-compensable irreparable harm in the absence of an injunction.

Finally, the interests of identifiable third parties and the public at large weigh against an injunction. Decisions concerning prison security are vested in prison officials, in the absence of a constitutional violation. Any interference by the federal courts in the administration of state prisons is necessarily disruptive. The public welfare therefore militates against the issuance of extraordinary relief in the prison context, absent a sufficient showing of a violation of constitutional rights. *See Glover*, 855 F.2d at 286–87. That showing has not been made here. Accordingly, Plaintiff's request for preliminary injunctive relief will be denied.

## Conclusion

The Court will deny Plaintiff's motion to supplement his complaint, (ECF No. 8), and Plaintiff's motion for preliminary injunctive relief (ECF No. 9).

Having conducted the review required by the PLRA, the Court determines that Plaintiff's claims against Defendant Russell will be dismissed without prejudice at Plaintiff's request. Plaintiff's claims against Defendants County of Kalamazoo, Fuller, Beers, Faulk, West, Cattes, and McMillon will be dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Additionally, the Court will dismiss, for failure to state a claim on which relief may be granted, the following claims: claims for violation of Plaintiff's First Amendment right to access the courts (Claim 1); claims for violation of his First Amendment right to freely exercise his religion (Claim 3); claims for violation of his First Amendment right to file grievances without retaliation (Claim 11); claims for violation of his Fourteenth Amendment right to adequate medical treatment (Claims 4 and 5); Fourteenth Amendment claims arising out of a lack of policy or training regarding the use of force (claim 6); and claims for violation of his Fourteenth Amendment substantive due process rights (Claim 8). The Court will also dismiss, for

failure to state a claim on which relief may be granted, Plaintiff's request for injunctive relief seeking release from custody.

The claims that remain are as follows: Claim 2, regarding Plaintiff's First Amendment right to associate, against Defendant Dziedzic; Claim 10, regarding Plaintiff's First Amendment right to file a lawsuit, without retaliation, against Defendants Dziedzic and Huber; Claim 7, regarding the use of excessive force on September 14, 2024, against Defendants Jelsomeno, Crump, Ensor, Whisman, McKenzie, and Marshall; and Claim 9,[17] regarding deliberate indifference to Plaintiff's isolated conditions of confinement, against Defendants Dziedzic and Huber. Plaintiff's complaint will be served on Defendants Dziedzic, Huber, Jelsomeno, Crump, Ensor, Whisman, McKenzie, and Marshall.

An order consistent with this opinion will be entered.

Dated:     July 7, 2025                      /s/ Robert J. Jonker
                                             Robert J. Jonker
                                             United States District Judge

---

[17] This also includes the procedural due process part of Claim 8 which is completely coextensive with Claim 9.